UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS HUGUELY,

        Petitioner,                  Case No. 1:14-cv-240

v.                                               Honorable Gordon J. Quist

CARMEN PALMER,

        Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim. Also before the Court is Petitioner's motion for an order directing the state court to provide the transcripts for his state court proceedings (docket #4). Because the action is subject to dismissal, Petitioner's motion will be denied as moot.

**Background**

Petitioner Dennis Huguely is a state prisoner incarcerated at the Michigan Reformatory. In 2011, following a jury trial in Wayne County Circuit Court, Petitioner was convicted of second-degree home invasion, Mich. Comp. Laws § 750.110a(3), for which he was sentenced as an habitual offender, Mich. Comp. Laws § 769.12, to life imprisonment. The Michigan Court of Appeals succinctly summarized the underlying facts and evidentiary basis for Petitioner's conviction as follows:

> Defendant was convicted of breaking into a family home on July 9, 2010, sometime between 8:00 a.m. and 3:00 p.m. The house was ransacked and several items were stolen. Defendant was linked to the crime because his fingerprints were lifted from the scene and because he brought one of the stolen items, an older Tag Heuer watch, to a pawn shop on the same day it was taken from the home.

(*People v. Huguely*, No. 303436, slip op. at 1 (Mich. Ct. App. July 17, 2012), docket #1-1, Page ID#35.)

On appeal, Petitioner claimed (1) that he was denied the effective assistance of counsel because counsel denied him the opportunity to fully testify and present his theory of defense to the jury, and (2) that his sentence was cruel and unusual and disproportionate to his offense. (*See* Def.-Appellant's Br. on App. 2, docket #1-1.) On July 7, 2012, the Michigan Court of Appeals remanded for resentencing because the trial court did not give sufficient reasons for departing from the sentencing guidelines. In all other respects, it affirmed the trial court's judgment.

Petitioner then filed an appeal to the Michigan Supreme Court. In his *pro per* application for leave to appeal, Petitioner reasserted his claim that his counsel was ineffective for preventing him from fully testifying, but Petitioner added an additional argument that his counsel was ineffective because he failed to investigate and present evidence of an alibi. (*See* Def.-

Appellant's Pro Per Appl. for Leave to App. 7-8, docket #1-1.)  In addition, Petitioner asserted a new claim regarding the denial of equal protection and ineffective assistance of appellate counsel because neither his appellate counsel nor the court provided him with copies of trial and sentencing transcripts to allow him to formulate issues for appeal.  (*See id.* at 13.)  The Michigan Supreme Court denied Petitioner's application for leave to appeal on November 20, 2012, because it was not persuaded that the questions presented should be reviewed by that court.

While Petitioner's appeal to the supreme court was still pending, the circuit court issued a new sentence of 11 to 30 years' imprisonment.  Petitioner was appointed counsel to appeal the new sentence, but his appeal was dismissed as untimely on April 22, 2013.  Petitioner filed the instant action on or about March 12, 2014.

In Ground I of his petition for habeas corpus, Petitioner asserts that his counsel was ineffective for denying Petitioner the opportunity to present his theory of defense (i.e., limiting Petitioner's testimony and failing to present additional evidence in support of Petitioner's alibi defense).  In Ground II, Petitioner asserts that his *new* sentence is unconstitutional because it is disproportionate to his offense and because he is being charged for the cost of his incarceration.  In Ground III, he asserts that he was denied equal protection and the effective assistance of appellate counsel because neither his appellate counsel nor the state court provided him with copies of trial and sentencing transcripts to allow him to formulate issues for appeal.

Several of the issues raised in the petition, including Grounds II and III and part of Ground I, have not been properly exhausted as required by 28 U.S.C. § 2254(b)(1), because they were not presented to the state court at all levels of review.  Petitioner has at least one available means whereby he can present any unexhausted issues: he may file a motion for relief from judgment under subchapter 6.500 of the Michigan Court Rules.  He has not done so.  Consequently,

on April 30, 2014, the Court issued an opinion and order (docket ##13, 14) requiring Petitioner to show cause why he should be entitled to a stay of these proceedings to exhaust his unexhausted claims in state court. The Court ordered Petitioner to respond within 28 days, and indicated that if he did not respond, the Court would review only his exhausted claim regarding the ineffective assistance of trial counsel in Ground I.

More than 28 days have elapsed and Petitioner has not responded to the Court's order. Consequently, the Court assumes that Petitioner no longer intends to pursue his unexhausted claims and deems the unexhausted claims to have been withdrawn. The Court will review only the exhausted claim in Ground I of the petition.

## Discussion

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth by the Supreme Court, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.

*Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–406). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011)).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 131 S. Ct. at 784; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Richter*, 131 S. Ct. at 785 (noting that the presumption that the state-court's

decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, the Court concludes that Petitioner is not entitled to relief.

Petitioner asserts that his trial counsel was ineffective for denying Petitioner the opportunity to present his "theory of defense" to the jury. (Pet. 4, docket #1.) According to Petitioner, he wanted to testify in his defense, but his counsel advised him not to take the stand because it might allow the prosecution to impeach Petitioner with unfavorable evidence, including his prior conviction of larceny and a recorded telephone call in which Petitioner purportedly admitted to receiving and concealing stolen property. (*See* Def.-Appellant's Br. on App. 17-18, docket #1-1, Page ID##63-64.) Nevertheless, Petitioner decided to take the stand and testify on his behalf, believing that the "truth of his position" would prevail. (Pet. 4, docket #1.) Petitioner asserts that he prepared a list of questions for his attorney to ask; instead, his attorney only asked a few questions about Petitioner's presence at the scene of the crime. Thus, Petitioner was only able to testify that he did not recall where he was on the date of the crime, but he was certain that he was not at the location of the offense, because he had never been there. (Def.-Appellant's Br. on App.

11, docket #1-1, Page ID#57.)  When the prosecution proceeded to cross-examine Petitioner, he refused to answer any questions, asserting that he did not want to do so until his counsel asked him the questions that he wanted to answer.  (*Id.* at 12, docket #1-1, Page ID#58.)  The court then struck Petitioner's testimony and had him removed from the courtroom.  (*Id.*)

During jury deliberations, the trial court questioned Petitioner's counsel about the decision to limit Petitioner's testimony.  Defense counsel stated that Petitioner's proposed questions were not relevant and that the decision to limit his testimony was a trial strategy; counsel was concerned about opening the door to admission of the evidence of Petitioner's prior conviction and the recorded phone call.  (*Id.*)  Counsel wanted Petitioner to give a "categorical denial" in response to the charges, and nothing more.  (*Id.* at 13, docket #1-1, Page ID#59.)

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that

counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. As for the prejudice prong of the *Strickland* test, the Court instructed the "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 131 S. Ct. at 788 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 131 S. Ct. at 786).

Applying the correct standard from *Strickland*, the Michigan Court of Appeals analyzed Petitioner's claim as follows:

> We find that the record establishes that defense counsel's decision not to question defendant further was a deliberate and strategic one. Defense counsel attempted to limit the scope of cross-examination through limited direct examination of defendant. We decline defendant's request to reevaluate counsel's trial strategy after the fact. "[T]his Court neither substitutes its judgment for that of counsel regarding matters of trial strategy, nor makes an assessment of counsel's competence with the benefit of hindsight." *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). Counsel's strategy did not constitute ineffective assistance of counsel

> simply because it did not work. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).
>
> Further, defendant has not demonstrated that he was prejudiced by his counsel's alleged ineffectiveness. Although defendant now contends that trial counsel should have asked additional questions to allow him to present his theory, he does not indicate what additional questions should have been asked or what additional testimony he would have provided. Absent that showing, defendant has failed to establish prejudice, i.e., a reasonable probability that but for counsel's omission, the result of the proceeding would have been different. In short, defendant has failed to establish the factual predicate necessary for his claim. *People v Hoag*, 460 Mich 1, 9; 594 NW2d 57 (1999).

(*People v. Huguely*, No. 303436, slip op. at 3 (Mich. Ct. App. July 17, 2012), docket #1-1, Page ID#37.).

The state court's adjudication of Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law. As indicated by that court, Petitioner did not indicate in his appellate brief what questions his counsel should have asked or what testimony he could have provided that would have aided his defense. Likewise, in his brief in support of the petition, Petitioner does not identify the questions that he wanted his counsel to ask him on direct examination, nor does he specify the testimony that he would have given. Thus, the Court agrees that Petitioner failed to demonstrate that he was prejudiced by counsel's decision to limit his testimony.

Petitioner also argues that his counsel failed to obtain "GPS" phone records showing Petitioner's location on the day of the offense, and failed to find witnesses who could have provided an alternate explanation for the incriminating evidence against Petitioner. To explain his fingerprints at the crime scene, Petitioner asserts that unidentified witnesses could have confirmed that he had "previously been in the area where the crime was committed, hunting scrap metal and could have left evidence of his presence then." (Br. in Supp. of Pet. 9, docket #3.) To explain his

possession of the watch, Petitioner apparently contends that he purchased it in front of the pawn shop on the day of the offense, and that unidentified witnesses could have verified that another individual was selling items in front of the pawn shop. (*See* Pro Per Appl. for Leave to App. 3, 8, docket #1-1, Page ID##16, 21.) According to Petitioner, his own testimony was necessary to introduce the foregoing evidence and witness testimony:

> Had counsel questioned petitioner as he requested it would [have] made the information counsel failed to get after being requested to do so, i.e. the names of the people in front of the store, and the phone records; Petitioner's testimony would have opened the door to call these witnesses who would have gave an accounting to the effect that Petitioner had previously been in the area where the crime was committed, hunting scrap metal and could have left evidence of his presence then, thus rebutting the presumption that his fingerprints were left during the commission of a crime. Further, Petitioner[']s phone records would have shown him to have been elsewhere when the crime was committed. This evidence could only be presented by the petitioner[']s "opening the door" via his testimony, in accordance with the Michigan Rules of Evidence.

(Br. in Supp. of Pet. 9, docket #3.)

Contrary to Petitioner's assertion, it was not necessary for him to testify in order to present testimony from other witnesses or evidence from his phone records. If such evidence existed, Petitioner's attorney could have presented it even without Petitioner's testimony. Thus, his counsel's decision to limit his testimony did not prejudice him by preventing him from presenting such evidence.

In a related issue asserted in Ground I of the petition, Petitioner contends that his counsel was ineffective for failing to collect and present this additional evidence. The latter issue was not properly exhausted in the state courts. Petitioner did not present it in his appeal to the Michigan Court of Appeals. Instead, he raised it for the first time in his application for leave to appeal to the Michigan Supreme Court. Presentation of an issue for the first time on discretionary

review to the state supreme court does not fulfill the requirement of "fair presentation" of a claim in state court. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). Applying *Castille*, the Sixth Circuit repeatedly has recognized that a habeas petitioner does not comply with the exhaustion requirement when he fails to raise a claim in the state court of appeals, but raises it for the first time on discretionary appeal to the state's highest court. *See, e.g.*, *Skinner v. McLemore*, 425 F. App'x 491, 494 (6th Cir. 2011); *Warlick v. Romanowski*, 367 F. App'x 634, 643 (6th Cir. 2010); *Thompson v. Bell*, 580 F.3d 423, 438 (6th Cir. 2009). Petitioner raised the issue for the first time on discretionary review and the Michigan Supreme Court declined to address it; thus, the issue was not properly exhausted and, like his other unexhausted claims, the Court deems this claim to have been withdrawn.

**Conclusion**

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because, after dismissal of the unexhausted claims, it fails to raise a meritorious federal claim. Because Petitioner's action is subject to dismissal, Petitioner's motion for an order requiring the state court to provide copies of transcripts (docket #4) will be denied as moot.[1]

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a

---

[1] In his motion, Petitioner implies that access to the trial transcripts is necessary for him to exhaust his unexhausted claims in state court before proceeding in the instant action. He asserts that Rule 7.212 of the Michigan Court Rules requires him to support his claims in state court with references to the transcripts. As the Court indicated in its prior opinion, however, Petitioner could have exhausted his unexhausted claims by filing a motion for relief from judgment pursuant to subchapter 6.500 of the Michigan Court Rules. References to transcripts are not necessary to file such a motion. Rule 7.212, which imposes requirements for pursuing an appeal, does not apply to the filing of a motion for relief from judgment. Petitioner apparently decided not to pursue a motion for relief from judgment because he did not respond to the Court's show cause order; thus, the Court need not grant his motion for transcripts before dismissing his unexhausted claims and proceeding to the merits of his exhausted claim.

"substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322,

327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated: September 5, 2014                              /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE